Case 15-1572, Bridging Communities Inc. et al. v. Top Flite Financial Inc. Oral argument, 15 minutes per side. Mr. Oppenheim for the appellants. May it please the court. This is an appeal of a denial of class certification in a TCPA case. In 2013, when the district court issued its opinion, it concluded by saying, the Sixth Circuit has not weighed in on the availability of class certification in TCPA claims under the circumstances of this case. The following year, in 2014, this court decided a case called American Copper and Brass Incorporated v. Lake City. As we discussed in the brief, that case was precisely the circumstances of this case. It involved the same fax broadcaster who solicited a business, and the business engaged their services in order to market their services. And the broadcaster chose the list of recipients. Nobody asked the recipients whether they wanted to receive these facsimiles. The facsimiles went out. Ultimately, the same records were analyzed by the same expert to determine who got them. In 2014, this court affirmed certification, as well as summary judgment in the Lake City case, rejecting various arguments similar to the ones that the defendant makes here, as being wholly speculative. In its briefing, the defendant does not point to any evidence in the record whatsoever beyond rank speculation that anyone consented to receive these faxes, which was the basis on which the district court denied certification. Rather, it tries to draw a distinction factually by pointing to its argument, its contention, that the individual who ordered the faxing here was wearing his hat as an independent contractor of the defendant's owner's other company, even though he bought faxes promoting the defendant's services. And that would, I assume, be an issue common to all of the cases. That's correct, Your Honor. Either all of the faxes were sent on behalf of this defendant or none of them were. But either way, that shouldn't be an obstacle to certification. Ultimately, as I'm sure this court is aware, just two months ago it issued a decision in a case called Siding v. Alko vending, where it set forth a number of standards and guideposts for district courts to use when evaluating a claim such as this, that faxes weren't sent on behalf of a particular defendant. And I would imagine that on remand, the district court is going to have to wrestle with that. But ultimately, that's not why the district court denied certification. And that's, frankly, as Your Honor just pointed out, no reason to deny certification. Ultimately, it comes down to the contention somehow that maybe, while the defendant didn't get consent from anybody, and Business-to-Business Solutions didn't get consent from anybody, maybe the list broker who assembled the list of targets that Business-to-Business Solutions bought way back when might have gotten universal consent from everybody, which is a novel argument. And one would assume it would have precluded class certification in American Copper v. Lake City as well as the other 15 Business-to-Business TCPA cases we cited in our briefing. But even if someone could produce a scintilla of evidence that that actually happened, which no one has, that would seem to be a common issue as well because that would have been a business practice of the list broker, I believe. Do you understand, defendant-to-be arguing, that it's not the case, at least potentially for some of these plaintiffs, that the facts was unsolicited or unconsented to, or do you understand them to be raising the possibility of an established business relationship? Well, that's an interesting question, Your Honor, and going through both the opinion and the briefing, it's one that's not entirely clear to me. I certainly know that the district court casts things in terms of actual consent. Ultimately, though, especially if we're starting to get into established business relationship, which I think is a term that hasn't appeared either in the opinion or the briefing, then all of a sudden you get into another issue, which is what about the opt-out notice that are on these faxes because you don't get the benefit of an established business relationship defense unless you have an opt-out notice that complies with the statute and the regulations. In fact, it's interesting that this court vacated a class certification denial, I think a couple years ago, in a case called In re Sandusky Wellness Center simply because the district court didn't analyze the opt-out notice. I know that in Terza, the Seventh Circuit said that that opt-out notice requirement would apply to consent too, which is a point I was going to get to, but it certainly applies. It's right in the statute as applying to an established business relationship defense, and frankly, that may be why the district court didn't go there. I'm just curious, if this case was decided by the district court in 2013, why has it taken three years to get up here? I think, well, first of all, we sought an interlocutory appeal of the class certification denial, and that was ultimately denied, and then the case moved forward on the individual claims, and I think that there was discovery. I don't recall if there was a round of summary judgment, but ultimately we got to a posture where I think we were just short a trial, and then there was this offer of judgment that the judge took to move the claim. I do know there was also a delay recalling that initially the case was handled by District Judge Zatkoff, who passed away, and I think there was some delay reassigning the case. What about this offer of judgment? I gather that the two individual claims were offered the max they could recover? They were. And then the judge said that makes the case moot? Yes, and obviously the thrust of our appeal is that the class certification was improvidently denied. Had it been granted, then obviously the offers were nowhere near what the class would be entitled to, but I think ultimately what happened was exactly what the Supreme Court just said shouldn't happen in Campbell-Ewald v. Gomez, which is that there was an unsatisfied, unaccepted offer of judgment that nonetheless was held to moot a claim. So I think that at the very least, even if the class certification denial wasn't an error, certainly the Rule 68 dismissal was. Wasn't this explored in discovery, the question of whether there was consent or an established business relationship? What is your best explanation of what the record says about those discovery requests and the provision or lack of provision of documents? Certainly. A defendant was asked to identify any members of the potential class. It was known from pretty much the get-go, at least since Mr. Biggerstaff did his report, exactly who was in the class, and we asked defendants, say, okay, do you have a relationship with any of these people? Do you have a relationship? Did you get consent from anybody to send faxes? And they provided nothing in the affirmative on either question. We went and got a declaration from the principal of the fax broadcaster, Business-to-Business Solutions, that's Ms. Abraham, whose declaration was discussed in the district court opinion, who basically said, hey, it's my company practice to buy lists from InfoUSA and use those to satisfy our clients' requests. I never talked to any of these people. I don't ask them for consent. And that is the whole of the record. I think that defendant may have said, oh, well, somebody else might have some information, but they certainly had every opportunity to come forward and say, aha, Jax Widgets Incorporated, line item number 571, we talked to them on April 30th of 2014, we got consent from them. There's nothing like that in this case. And unless there are any further questions. Had there been, would the solution to that have been a denial of class certification or would the solution have been to categorize by subclass or by exclusion from the class? I think the latter, certainly. And I know that I've been involved in TCPA cases where certain entities were carved out through exclusion from a class. And I don't know whether it would be appropriate, and I guess it would depend on the numbers, to have a subclass and argue that even if they gave consent, the opt-out notice is deficient so they still have a claim. But I admit that that would be a different claim. But we never got there because there aren't such people here. Thank you, Your Honor. Thank you. Good afternoon. Tom Lund, appearing on behalf of the defendants. Just to answer your sort of procedural question as to the length of time, I suspect that has a great deal to do with Judge Cone is, now that he's 92, is moving a little slower than he did in his 80s. So while he's still rather remarkable, he's just taking a little longer to decide things. And I think that is largely the reason why it's taken a long time to get here. Just one point, I think we're in agreement with the plaintiff. If this case were reversed as to class certification and went back down, liability would be determined under the siding and insulation case that you authored, Judge Gilman, a few months ago. They had argued in their brief that it would be controlled by the Imhoff case, but the faxes in question here were sent out in March of 2006, which is before the August 1st date when the FCC regulations that were at The standard of liability, if that's ever determined on the merits, would be determined under siding and insulation, not under Imhoff. How do you distinguish the American Copper case? The American Copper case dealt with a couple of issues on class cert, which weren't considered here. American Copper was primarily a case that dealt with standing under the TCPA, and it talked about whether or not plaintiffs and class members were objectively ascertainable as a general matter. And then it also talked about the application of Michigan Court Rule 3.501A5. None of those issues are present in this case. We're talking about the question of whether or not consent is an individualized question or whether that's a common class question. And on this record, this is an individualized question. What do you have that supports the conclusion that it's an individualized question here? Well, first of all, it's the plaintiff's burden of proof to show that it is a common question. The plaintiff has not presented any evidence below or here. The plaintiff has put into evidence the statement of Ms. Abraham. Right, which? It says, I ordered these from InfoUSA. I do not ask them. I do not ask any of the people to whom I send them. I just send them out. And the record, the question to you in discovery was, who do you have that would qualify as, that would give us information that there were people who consented and you provided nothing? I don't understand how the record supports your argument. There's no evidence as to what InfoUSA did, and plaintiff still has the burden of proof on that issue that this would be a common question and not an individualized question. Well, doesn't your argument on the Fifth Circuit case of, I think it's Gene and Gene LLC versus BioPay, that makes it clear, doesn't it, that if you obtain these fax numbers from a single purveyor, then that's a class-wide means of establishing the lack of consent. Isn't that exactly what you have here? It's a class-wide question. You got them all from InfoUSA, used only InfoUSA information. Carol, whatever her last name was, did not do anything further to check for consent. So you've got one singular group provided by InfoUSA, all of whom are subject to the same question of consent. So you have a common question. No, there's 4,250 questions as to whether or not each and every one consented to InfoUSA. And none of them have been shown not to have done so, and there's no evidence in this record that that's a common question as opposed to an individualized question. And Gene and Gene did find that on the record in that case, just like in the record in this case, that this is an individualized question. So any time you have... I'm struggling with the language in Gene versus Gene that talks about the common question in this type of case is whether the inclusion of the recipient's fax numbers in the purchased database indicated their consent to receive fax advertisements. All you have to have is a predominant common question. So that's the question here. You have one group from a single purveyor, so the question becomes common to all of those people in that group as to whether they gave consent. The question is whether each and every... whether each individual member gave consent, which is 4,250 questions, not one common question. It's more likely, right, that the question is going to be, does this list purveyor seek consent? Well, that is a question, and perhaps there is, in fact, a common defence that would exist, or perhaps there's no records at all that show this answer to this question either way. But what we're looking at right now is whether on the record that was presented and the evidence that was presented by this plaintiff to Judge Zatkoff, is there evidence that that's a common question? They didn't present any evidence on that issue. But the plaintiffs all... OK, the plaintiffs contend that they didn't... ..that they didn't grant consent, that these were, to use the statutory phrase, these were unsolicited, right? That is a contention they're making, yes. OK, and the only... As far as we know, the only entity that might have sought their consent is the purveyor of the list, because the defendants, they have all sorts of defences, but having sought and obtained consent is not one of them. Correct. We have not... This was done without the knowledge of this particular defendant. It did not seek consent before these faxes were sent out. Right. OK. And then we have a company that's selling a list, a whole list. Yes. And the question is going to be not whether they sought the consent of number 476, number 629, number 3000, this. It is going to be whether this company seeks consent before they add people to the list. That is a question that may exist, but at the end of the day it is a question of whether or not each and every one of these, or each individual plaintiff, actually gave consent. That is one of the questions that exists here. That's true, but when you look at what's going to be litigated and what the common issues are, it is much more likely, almost to a certainty, that the issue that's going to be litigated is what this company does as a practice, as opposed to whether they sought everybody's consent and actually received it from each individual person. See, if it were the latter question, then I can see how those would be individual. If the practice is that they seek the consent and you've got to figure out which people actually gave it, then the focus is on all these individual trials. But it seems pretty clear that the real question is going to be how do they assemble these lists? That is a question that would exist, but there's three possibilities here. One, the information from InfoUSA may or may not answer that question. It may not answer that question because they may not have records back in 2005 or the time period when this list would have been sold. If that's the case, we will be looking at each individual entity to find out whether or not they consented. Why would you be looking at each individual entity if, under the terms of the Fifth Circuit case, the question is not what each individual person in that group would do. The question is whether there is a class-wide means for establishing the lack of consent. And here, there is a class-wide means. You go to InfoUSA and you say, do your procedures include the acquisition of consent to receive faxes? Yes or no? I think you're speculating as to what would happen from here because we don't know what the practice is from this record. And second, I don't know why we wouldn't look into things further depending upon what InfoUSA said. Well, you had the opportunity and discovery to provide any of that information in response to questions regarding consent, and nothing was placed into the record on your behalf. So that leaves us, it seems to me, with a class-wide means of making that determination. That's all. The predominance question does not require that you come to the final merits resolution at the stage of class certification. It requires that you determine whether through a class-wide basis you have a means of determining a question that is common to all of the individuals. If there's an absence of evidence in the record, then that's the problem of the party that has the burden of proof. And what Judge Zatkoff found on this record was that this plaintiff had not met its burden of proof of showing that it is a common class-wide question. Who has the burden on the consent issue? Is that an affirmative defense of yours that these plaintiffs all consented and therefore it's not a violation of the Act? No, I think it's... When you look at the issue of class certification, the party seeking class certification has the burden of proof of showing that the issues are subject to common resolution. They have not shown on this record with any evidence, and they had plenty of time to conduct discovery too, and they didn't take depositions and they didn't do a lot of things during discovery. And they didn't meet their burden of showing that this would be resolved on a class-wide basis. And as a result... My concern is that I think that there is some confusion in your argument between the ultimate merits determination and the preliminary question at class certification of whether there is a means common to all the members by which you can determine whether there was a lack of consent. You don't have to know whether it was given or not in order to certify. What you have to know is whether there's a common means of making that determination. Here, the allegation is there is a common means of making that determination because that means is by determining through InfoUSA what its procedures were for everyone who appeared on that list. That's all that's before us. The merits of who did what, what a particular member knew or didn't know, that may be a defence. You may raise that there is an established business relationship as an affirmative defence. But at this stage of class certification, I'm not understanding your argument because it seems to me to be very merit-based. The argument is simply that there's no evidence showing that this would be a common question. The plaintiff is the one offering speculation about this. And if the plaintiff is offering speculation... The plaintiff has the burden of proof on this. I think I probably don't agree that it's the burden of proof. The burden of proof is to show that there is a common question that predominates. And here, the common question that predominates is whether or not the purveyor, InfoUSA, engaged in the action to determine whether there was consent. Whether they did or not doesn't matter. It's whether they had the means, which makes it a common question. I think we've been around. I disagree. I mean, I believe it's an individualized... What's your best authority that supports your position? What's the best case you can cite? Gene and Gene. Which is the Fifth Circuit? That's the Fifth Circuit case, which is the only circuit court case considering the issue of whether or not consent is an individualized or generalized question. I mean, there's a couple other issues here that we have dealing with, you know, whether or not these alleged entities still exist, whether or not there's some successor that exists for them. We've presented evidence in the record showing the tremendous problems with the Bigger Staff Affidavit and why we'll be doing a great number of individualized determinations as to whether class members have standing to pursue claims. And that makes this case, based upon the record that we presented, unique and different from the host of other cases that have existed. I'm not aware of any other case that has presented evidence showing the problems and the individualized questions as to standing that would exist that exist here. Would you... How do you respond to the argument that, yes, but there's another common question that is an overarching question that weighs heavily in the other direction, which is whether this gentleman had authority to ask for this fax blast for your client. I mean, the idea of litigating that in 4,000 separate cases is a little strange. I would agree that that is a common issue as to whether or not these circumstances would make us a sender under the TCPA. So one final question. Do you concede that Campbell Ewald resolves the issue as to the Rule 68 offer of settlement? No, because I don't think this is a Campbell Ewald situation. Campbell Ewald dealt with someone who was sending out an offer of judgment trying to moot an entire class. Well, isn't that your argument? There's no jurisdiction because there was an unaccepted offer of settlement? Right, and Campbell Ewald, that was trying to do a before-class certification. We did this after-class certification was denied, and then in the lower court there were just the two plaintiffs that were remaining. And to try to get the case resolved, we then did the offer of judgment for more than these two plaintiffs could possibly recover. But we weren't doing that, which I think is a lot of gamesmanship people have done to try to moot an entire class by saying, you individual plaintiff, we're getting rid of you. But if it was denied in error, then Campbell Ewald would apply. But if it wasn't denied in error, then it's an entirely different situation. Generally, but there's one difference here. I think there may be an open question, not as to whether or not sending out this offer of judgment somehow moots the class, but whether or not these two particular plaintiffs could be class representatives. And I don't think that that would be an issue. If you reverse, they would have to be resolved, first in the district court, and then perhaps might get resolved in other appellate courts or the Supreme Court at some point in time. But that's a different question. I mean, they could still proceed with the class. There might be an argument we could make that these individual plaintiffs could no longer be class representatives. Because they rejected a settlement? Yeah, I think so. I think that because we made the offer of judgment for more than they would have been able to recover. Well, under that argument, then you go to everybody in the class and make the offer that's more than they would recover, and you're done. I think that that, well, one, if we actually did pay everyone more than they recovered in 4,000 cases, I'm not sure. That's never been a situation that I've been aware of where someone has actually agreed to say, all 4,250 of you, here's all your damages. And I don't think that's something that we would be contemplating doing. That would be... I'm just looking at the analysis. Right, I understand. I'm just looking at the concept. I mean, we have a situation where this particular offer was done when there wasn't class certification pending. So it may have been resolved as to these two, but there's still 4,250 potential class representatives out there. Okay. Thank you very much. You're welcome. Thank you. I think Judge Gilman's first question to my honored colleague was a good one. How is this case different from Lake City? And I was listening for an answer, and we didn't really get one. And the reason is, it's not. And while the answer we did get was, well, they didn't exactly talk about this speculative consent issue in Lake City, but one of the arguments that was made in Lake City was, well, you can't trust the records because, well, maybe some of these transmission records are wrong. And I thought it was relevant that what this court said in Lake City in addressing that argument is, this argument is wholly speculative. And that's really all that defendants are offering here. They're offering speculation that maybe out there somebody might have offered consent, and then trying to wrap it up in what I think is a conflation and a dangerous one of conceptions of burdens of proof. And I think that I wanted to touch on that briefly. I think Judge Gilman also raised the question on, well, wait a minute. Is consent really plaintiff's burden of proof? And the case law that I'm aware of is that it isn't once you get to the merits issue, that it's an affirmative defense, as Judge Gilman posited. So ultimately, it's going to be their burden to produce something if they want to get out of it. But as Your Honors pointed out, we're just at class certification, and it's going to be a common question. So you don't think that an unsolicited fax is part of the plaintiff's case? It absolutely is, but I'm saying that to the extent that the defendant wants to proffer a defense to that case, it's got to come forward with something more than saying, well, you haven't talked to every single person that could conceivably have ever talked to this recipient, and maybe the recipient told one of the people that they met throughout their 46 years on this planet that they wanted to get fax advertisements. That's not a defense. And that's really the defense that defendant's trying to offer here. And I guess the last point I wanted to make, and we made this in our reply brief, and defendant hasn't addressed it, is that even if that's their defense, that this InVoteUSA entity got blanket consent from the people it put on its list years and years ago, there's still an obligation by the people who are sending in the here and now to confirm that consent. And that's what the FCC has said, and the record is clear that neither defendant nor B2B did that here. Thank you, Your Honors. Thank you. Thank you both. You will be submitted.